IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BYLER MANAGEMENT CO, LLC, :
    Plaintiff :
:
vs.                  CIVIL NO. 1:CV-10-0632
:
BULLETPROOF ENTERPRISES, INC, :
    Defendant :

*M E M O R A N D U M*

I.    *Introduction*

    We are considering the motion to remand filed by plaintiff, Byler Management Co., LLC. Plaintiff filed this suit in the Court of Common Pleas of Lebanon County, Pennsylvania, alleging that defendant, Bulletproof Enterprises, Inc., breached a lease agreement. The complaint sought payment of a certain portion of the unpaid rent as well as ejectment of Defendant from the property.

    Defendant removed the action here on the basis of diversity jurisdiction, asserting that Plaintiff is a citizen of Pennsylvania and that Defendant is a Florida corporation with its principal place of business outside Pennsylvania. Defendant also asserts the amount in controversy exceeds $75,000, the threshold amount for diversity jurisdiction.

    In moving to remand, Plaintiff argues that neither jurisdictional requirement is satisfied. We agree that Defendant has not shown that the amount in controversy exceeds $75,000 and will therefore remand to state court.

II. *Background*

Plaintiff's complaint alleges the following. Plaintiff is a Pennsylvania corporation with its principal offices located in Lancaster, Pennsylvania. (Doc. 1-4, Compl. ¶ 1). Defendant is a New York corporation with a New York City address, conducting business in Pennsylvania with offices in Annville, Pennsylvania. (*Id.* ¶ 2). On or about December 1, 2008, the parties entered into a lease agreement whereby Plaintiff agreed to lease property to Defendant for an initial term of one year, beginning December 1, 2008, and ending on November 30, 2009. (*Id.* ¶¶ 3 and 4; doc. 6-2, Lease Agreement). The Lease Agreement described the premises as being two distinct areas: Area 1, the house and barn, and Area 2, vacant land. (Doc. 6-2, Lease Agreement ¶ 1).

For the initial term of the lease, Defendant immediately owed $10,000 for rent on Area 1, and was to pay additional sums for the rent of Area 2. (*Id.* ¶ 3). The rental for the second year for both areas was $15,450, payable on December 1, 2009. (*Id.*). The lease would automatically renew for successive additional terms of one year unless one party gave notice at least two months before the end of the initial or renewal term of its intent to terminate the lease. (*Id.* ¶ 4).

The lease authorized Defendant to make "reasonable alterations and improvements" to the premises at its expense and that these would be considered fixtures belonging to Plaintiff. (*Id.* ¶ 5(a)). According to the lease, Defendant contemplated installing "considerable fencing" for its "horse operations" on the property and could ask Plaintiff to reimburse it for any such expense. (*Id.* ¶ 5(b)). If the property were sold, and Defendant was not allowed to remain as a tenant, Defendant was to be reimbursed on the following schedule: (1) "75% of Eligible Expenses" if the sale was in the first year of the lease; (2) 50% in the second year; and (3) 25% in the third year. (*Id.*). If Plaintiff found a buyer, Defendant had the right to purchase the property at the price

offered. (*Id.* ¶ 9). Plaintiff is entitled to recover all costs and attorney's fees if Plaintiff files suit to enforce the lease. (*Id.* ¶ 15).

Plaintiff's complaint alleges that neither party gave notice that the lease would be terminated, so the lease renewed for the second year, and Defendant was obligated to pay $15,450 on December 1, 2009. (Doc. 1-4, Compl. ¶¶ 7-9). Defendant has failed to make any lease payments, (*id.* ¶ 13), and Plaintiff gave Defendant notice of its default. (*Id.* ¶ 15). Defendant failed to cure its default. (*Id.* ¶ 16). Plaintiff seeks damages in the amount of $15,450 for the second-year rent, plus costs and attorney's fees. Plaintiff is also seeking eviction (*id.* page 1), as it alleges it "is entitled to possession of the premises." (*Id.* ¶ 20).

III.    *Discussion*

Defendant removed the state-court action here pursuant to 28 U.S.C. § 1441(a), invoking our diversity jurisdiction under 28 U.S.C. § 1332(a) for "all civil cases where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," *id.*, between "citizens of different states." *Id.*, § 1332(a)(1).

The party removing the case to federal court has the burden of demonstrating jurisdiction. *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 151 (3d Cir. 2009). "In removal cases, we begin evaluating jurisdiction by reviewing the allegations in the complaint and in the notice of removal. *Id.* In a case where there are disputes over factual matters related to jurisdiction, the party asserting jurisdiction has to show jurisdiction by a preponderance of the evidence. *Frederico v. Home Depot*, 507 F.3d 188, 194 (3d Cir. 2007). When the parties do not dispute the jurisdictional facts, or where the court makes factual findings on jurisdiction, the legal certainty test applies. *Id.* Under the legal certainty test, when it appears to a legal certainty that the plaintiff was

never entitled to recover the jurisdictional amount, the case must be remanded. *Id.* Otherwise, the court retains jurisdiction.[1]

In the instant case, Plaintiff argues neither requirement of diversity jurisdiction has been satisfied. We begin with its contention that Defendant has not shown the parties are "citizens of different states." Plaintiff admits it is a citizen of Pennsylvania for diversity purposes, but argues it has not been established that Defendant is not a citizen of Pennsylvania.

For the purpose of diversity jurisdiction, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1). In the notice of removal, Defendant avers it "is a Florida corporation with its principal place of business outside of Pennsylvania." (Doc. 1, Notice of Removal ¶ 5). Defendant has also submitted the affidavit of one of its owners affirming that it has not "established any central operation or principal place of business" in Pennsylvania and that its "central operations" are "temporarily" in New York City. (Doc. 22, Jeffrey Brooks Aff. ¶ 6). Plaintiff has submitted no evidence to the contrary, only its "belie[f]" that the principal place of business is at the leased Pennsylvania premises. (Doc. 26, Reply Br. at p. 7). Defendant's averments exclude its citizenship as being in Pennsylvania, and thus section 1332(a)'s jurisdictional requirement that the suit be between "citizens of different states" is satisfied. We turn now to the amount-in-controversy requirement.

The Third Circuit assesses the amount in controversy from the viewpoint of the plaintiff. *See Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 539 (3d

---

[1] In a case where the plaintiff expressly limits his claim for relief to an amount below the jurisdictional threshold, a different "legal certainty" test applies. In those circumstances, the party asserting federal jurisdiction "must show, to a legal certainty, that the amount in controversy *exceeds* the statutory threshold." *Id.* at 196 (emphasis in original). This higher burden is imposed because a plaintiff is the master of his claim and may limit it with the intent of avoiding litigating it in federal court. *Id.* at 195-96.

4

Cir. 1995)(ruling in an action for injunctive relief that the amount in controversy is measured "by the value of the rights which the plaintiff seeks to protect"). Additionally, the Supreme Court has held that "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977), so that the amount in controversy in *Hunt* was determined by the losses the members of the respondent apple-growers association would incur from the challenged statute. *Id.* The instant case does not involve declaratory or injunctive relief, but Plaintiff seeks to eject Defendant from the premises, a similar form of relief in that it does not demand damages, or damages in a specific amount. Hence, we rely on *Columbia Gas* and *Hunt* to decide whether the amount in controversy has been satisfied here.

Defendant argues the amount in controversy exceeds $75,000 for several reasons. First, Plaintiff is requesting that it be ejected from the premises. Hence, the object of the litigation is possession of the farm, meaning that the amount in controversy must take into account the value of the lease. In support, Defendant cites *Miller v. Cabot Oil & Gas Corp.*, No. 08-665, 2008 WL 2367293, at *2 (M.D. Pa. June 5, 2008)(in a diversity action seeking a declaration that an oil and gas lease is null and void, the object of the litigation is the lease, and the court must determine the value of the lease to determine the amount in controversy). Here, Defendant argues the value of the lease is represented by the amount of future payments due under the Lease Agreement. (Doc. 23, Opp'n Br. at p. 10).

Second, Defendant says we must take into account its right under the lease to purchase the property, which Defendant values as the value of the property itself, $1.5

million, based on the March 2010 offer Plaintiff made to sell it to Defendant for that amount. (Doc. 1-3, Notice of Removal, Ex. A).

Third, we must also take into account the money, in excess of $235,000, Defendant has spent on numerous improvements to the property. (Doc. 22, Brooks Decl. ¶ 4; Dommel Decl. ¶ 4). Defendant asserts this expenditure figures into the amount in controversy in two ways. First, it represents capital improvements that will go to Plaintiff if it is successful in ejecting Defendant. Defendant asserts these expenditures must be factored in as part of the amount in controversy on the ejectment claim. Second, the $235,000 represents a loss to Defendant, and this loss may be used to determine the amount in controversy as well.

In sum, Defendant argues that considering the value of the lease payments, the value of the capital improvements, and the value of the right to purchase the property (at $1.5 million), it cannot be said to a legal certainty that Plaintiff can never recover in excess of $75,000. Hence, we have jurisdiction.

In opposition, Plaintiff argues the amount in controversy has not been met because it is seeking money damages only in the amount of $15,450. At most, if one includes the first year's unpaid rent, the total comes to $30,900. This "easily and readily determinable" amount is the amount in controversy, and Plaintiff sees no need to attempt to assign a value to Plaintiff's ejectment claim. Plaintiff maintains that the object of the litigation is the collection of unpaid rents up to the expiration of the leasehold by Defendant's failure to pay rent, and thus the amount in controversy cannot exceed $30,900. (Doc. 26, Pl.'s Reply Br. at pp. 3-4).

We reject Plaintiff's position that only the amount of unpaid rent should determine the amount in controversy. Under *Hunt*, *supra*, the amount in controversy is determined by the value of the object of the litigation, and under *Columbia Gas*, *supra*,

we determine the amount in controversy "by the value of the rights which the plaintiff seeks to protect." 62 F.3d at 529. In other words, we look at the value of the litigation from the plaintiff's point of view. *See Johnson v. Gerber Products Co.,* 949 F. Supp. 327, 330-31 (E.D. Pa. 1996). Since Plaintiff is not only seeking a certain amount of unpaid rent but to eject Defendant as well, we have to determine the value to Plaintiff of the ejectment action. Thus, we must consider the increase in value to the property from the improvements Defendant has made[2] and the value of leasing the property with the improvements.

Under this approach, we conclude Defendant has not met its burden of establishing that the amount in controversy exceeds $75,000. We start with the unpaid rent. For jurisdictional purposes that amount is only $15,450. Plaintiff admits the unpaid rent is $30,900, but as noted above, Plaintiff is the master of its claim and may limit it to avoid federal court jurisdiction.

Defendant next relies on the value of the lease to Plaintiff, which we believe is more accurately characterized as the value of leasing the property with the improvements added by Defendant. The difficulty here is that Defendant has not assigned a value to the property as a leasehold, merely asserting that the improvements contribute an unspecified sum to the amount in controversy.

In this regard, *Miller, supra*, is distinguishable. In that the case, the plaintiffs wanted to end an oil and gas lease which paid them a total of $2,785, plus royalties. 2008 WL 2367293, at *1. The district court decided it had jurisdiction because the defendant's affidavit affirmed that the value of the lease exceeded $75,000, essentially

---

[2] Plaintiff has indicated that it believes it need not reimburse Defendant for those improvements.

because the value of the oil and gas subject to the lease exceeded $75,000. 2008 WL 2367293, at *3. No similar affirmation has been made here.

Defendant also relies on its right under the lease to purchase the property, based on Plaintiff's March 2010 offer to sell the property to Defendant for $1.5 million. We reject this argument. First, it is based on the value of the lease to Defendant, and as noted above, the Third Circuit determines the amount in controversy by the value of the rights being asserted by Plaintiff.[3] Second, the relevant value is the value of the option to purchase, not the value of the property, and Defendant provides no evidence on the value of the right to purchase. Finally, there is currently no third-party buyer for the property, so reliance on the value of Defendant's right to purchase is speculative, and the court cannot rely on speculative arguments in determining the amount in controversy. *Columbia Gas*, *supra*, 62 F.3d at 543.

Defendant also relies on the costs it has incurred in making improvements to the farm, in excess of $235,000. Defendant asserts that this expenditure satisfies the jurisdictional amount, as a loss to it if Plaintiff prevails in the ejectment action. However, as noted above, jurisdiction is not assessed by losses the defendant may incur. Defendant also maintains that the $235,000 represents capital improvements that will go to Plaintiff if it is successful in ejecting Defendant. We reject this argument as well. Since we assess jurisdiction from Plaintiff's point of view, Defendant did not submit any evidence indicating how these expenditures increased the value of the property so that the jurisdictional amount was satisfied. It may seem to Defendant that $235,000 in

---

[3] Defendant has misconstrued *Columbia Gas*, which it cites as determining the amount in controversy from the viewpoint of the tenant. That case did determine the amount in controversy from the viewpoint of the tenant but only because the tenant was the plaintiff in that case. Defendant also relies on *City of Moore v. Atchison, Topeka & Santa Fe Ry. Co.*, 699 F.2d 507 (10th Cir. 1983), but that case allows the court to consider loss to the defendant, which is not the Third Circuit's approach. *See Johnson*, *supra*, 949 F. Supp. at 330.

capital improvements should result in an increase in the market value of the land but that is not necessarily so.

Defendant has failed in its burden of establishing that we have jurisdiction and we will remand the case to the state court.  *See Anthony C. Mengine Law, Inc. v. Healthport*, __ F. Supp. 2d __, __, 2010 WL 537742, at *7 (W.D. Pa. 2010).

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: June 14, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BYLER MANAGEMENT CO, LLC, :
    Plaintiff :
     :
    vs.                       CIVIL NO. 1:CV-10-0632
     :
BULLETPROOF ENTERPRISES, INC, :
    Defendant :

*O R D E R*

AND NOW, this 14th day of June, 2010, it is ordered that:

   1. Plaintiff's motion (doc. 9) to remand is granted.

   2. The Clerk of Court shall forward this action to the Court of Common Pleas of Lebanon County, Pennsylvania for further proceedings.

   3. Plaintiff's request (doc. 9) for attorney's fees is denied.

   4. The Clerk of Court shall close this file.

                                /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge